IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOO LINE RAILROAD COMPANY, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 15 C 10328 |
| ILLINOIS STATE TOLL HIGHWAY AUTHORITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Soo Line Railroad Company, doing business under the name of its parent company, Canadian Pacific Railway Company, has sued the Illinois State Toll Highway Authority (Authority). Canadian Pacific seeks preliminary and permanent injunctions prohibiting the Authority from condemning Canadian Pacific's right of way, property, and rail facilities located in Bensenville, Illinois. It contends that the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. § 10101, preempts the Illinois Toll Highway Act and the Illinois Eminent Domain Act insofar as they permit the Authority to condemn Canadian Pacific's property. Canadian Pacific also requests a declaratory judgment, pursuant to 42 U.S.C. § 1983, to the effect that any action the Authority might take to condemn or otherwise take possession of the Bensenville property is a violation of Canadian Pacific's constitutional rights. The Authority has moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). For the reasons stated below, the Court grants the Authority's

motion.

**Background**

For present purposes, the Court accepts as true the allegations contained in Canadian Pacific's complaint. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). The Court may also properly consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Canadian Pacific is a rail carrier that operates a rail transportation network from Vancouver, British Columbia, to gateway terminals in Chicago, Toronto, Montreal, and Albany, New York. It provides rail and intermodal transportation to destinations throughout North America, including connections to ports and other rail carriers. Like other rail carriers of its size, Canadian Pacific has been classified as a Class I rail carrier by the Surface Transportation Board of the United States Department of Transportation. Because Chicago is a crucial hub for the North American rail network, Canadian Pacific and six of the other seven Class I rail carriers meet regularly at the Greater Chicago Terminal, where they interchange as much as a quarter of all of the nation's rail volume every day.

Canadian Pacific's only Chicago-area switching terminal is located at the company's rail facility in Bensenville, Illinois. Canadian Pacific's Bensenville Yard spans approximately 320 acres and consists of roughly 74 miles of rail capacity spread over 119 tracks in six separate rail operation yards used for switching and intermodal traffic. The Yard also contains repair facilities, administrative buildings, a control tower, and a

2

turntable and tracks, which are used to reposition locomotives.  On average, the Yard handles over 2,200 freight rail cars per day.  According to Canadian Pacific, a significant amount of its business depends upon its continued use of the Bensenville Yard.

In 2010, the State of Illinois established an advisory council to explore the possibility of expanding the Elgin-O'Hare Expressway to connect it with Interstate-294.  In June 2011, the advisory council recommended going ahead with the project, at which point the Authority started exploring options for the proposed project, which it titled the Elgin O'Hare Western Access (EOWA) project.  In various proposals and plan maps that the Authority has generated over the last four-and-a-half years, it has consistently indicated that its plan would include a right of way running through the Bensenville Yard where Canadian Pacific's tracks and locomotive turntable are currently located.  In its most recent proposed plans, the Authority has indicated that the project will require it to use roughly thirty-six acres of land contained in the Bensenville Yard property.

The wheels began to turn on the EOWA project a few years ago, and construction is already underway on various portions of the project.  In April 2015, the Authority sent Canadian Pacific a letter captioned "Notice to Owner – Appraisal."  *See* Def.'s Ex. 1, dkt. no. 17-1, at 2.  In that letter, the Authority notified Canadian Pacific that Bensenville Yard was located "within the project area" for EOWA; Canadian Pacific's property "may be needed for construction of the EOWA improvements"; and the Authority would be sending a professional real estate appraiser to determine the property's fair market value.  *Id.*

In July 2015, the Authority filed a petition with the Illinois Commerce Commission seeking approval to modify grade crossings owned by Canadian Pacific in another area

3

outside of the Bensenville Yard. During a hearing related to that petition in early August 2015, a representative of the Authority testified that EOWA would pass through the Bensenville Yard.

Finally, in September 2015, the Authority served Canadian Pacific with a letter captioned "Notice of Intent to Acquire with Railyard Modifications," in which the Authority indicated its continued interest in purchasing or otherwise acquiring a portion of the Bensenville Yard. Pl.'s Ex. F, dkt. no. 1-6, at 1. The Authority noted that it had "undertaken an extensive effort to address the current and future rail yard plans noted by the Canadian Pacific Railroad," and had accordingly "refashion[ed] some of the parcels after modifying [its] roadway design to ensure that only the land essential for the construction will be purchased." *Id.* In the letter, the Authority also stated that it wanted to meet with Canadian Pacific "to share [its] updated EOWA design plans, including the scaled back real estate take, and also to present [its] purchase offer." *Id.* Canadian Pacific insists that no portion of the Bensenville Yard is, or has ever been, for sale.

Canadian Pacific sued the Authority in November 2015. In its complaint, Canadian Pacific claims that the Authority intends to exercise the eminent domain power it was given under the Illinois Toll Highway Act, 605 ILCS 10/1, and the Illinois Eminent Domain Act, 735 ILCS 30/1-1-1, to circumvent Canadian Pacific's refusal to sell its property. As a regulated Class I rail carrier, Canadian Pacific contends that to the extent these laws authorize the Authority to take the property by eminent domain, they are preempted by the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. § 10101. Canadian Pacific seeks a declaratory judgment to that effect. It also seeks a declaratory judgment that such exercise of eminent domain "would constitute

an impermissible deprivation of Plaintiff's rights under the United States Constitution, Art. I § 8, in violation [of] 28 U.S.C. § 1983." Compl., dkt. no. 1, at 10. Lastly, Canadian Pacific requests an injunction prohibiting the Authority "from taking any further action seeking to condemn Plaintiff's right of way, property and rail facilities." *Id.* at 11. The Authority has moved to dismiss Canadian Pacific's complaint on the ground that there is no justiciable dispute between the parties.

## Discussion

The ICCTA confers upon the Surface Transportation Board exclusive jurisdiction over the regulation of railroad transportation. *See* 49 U.S.C. § 10501(b). Railroad "transportation," according to the statute, includes railroad property, facilities, and equipment "related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use." 49 U.S.C. § 10102(9). As the Seventh Circuit has observed, "Congress's intent in the Act to preempt state and local regulation of railroad transportation has been recognized as broad and sweeping." *Union Pac. R.R. Co. v. Chicago Transit Auth.*, 647 F.3d 675, 678 (7th Cir. 2011). Preemption under the ICCTA can be categorical or "as applied." *Id.* at 679. When a plaintiff mounts an "as applied" preemption challenge under the ICCTA, a court must determine "whether the condemnation of railroad property 'would prevent or unduly interfere' with railroad transportation." *Id.* at 680 (quoting *Norfolk S. Ry. Co.—Petition for Declaratory Order*, STB Finance Dkt. No. 35196, 2010 WL 691256, at *3 (S.T.B. Feb. 26, 2010)).

The Authority does not dispute that the ICCTA may preempt certain exercises of state-conferred authority to condemn property. But it seeks dismissal of Canadian

5

Pacific's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that no ripe justiciable dispute currently exists between the parties. Ripeness is a justiciability doctrine "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (internal quotation marks omitted) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57, n.18 (1993)). Ripeness "is peculiarly a question of timing," a doctrine that forbids plaintiffs from asserting injuries that "may depend on so many future events that a judicial opinion would be advice about remote contingencies." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006) (internal citations and quotation marks omitted). "[W]hen it implicates the possibility of this Court issuing an advisory opinion," ripeness "is a question of subject matter jurisdiction under the case-or-controversy requirement." *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008).

The Authority argues that this dispute is not ripe because the injuries Canadian Pacific anticipates sustaining are indefinite, remote, and not certain to accrue. First, the Authority notes that Canadian Pacific has not contended that the ICCTA categorically preempts Illinois's Toll Highway Act or Eminent Domain Act. Because Canadian Pacific has mounted only an "as applied" challenge, the Court can find preemption only to the extent the particular authority exercised under these laws in fact interferes with interstate rail operations. The Authority says that because it has taken none of the steps necessary to commence a condemnation action, the Court can have no way of knowing whether its actions will cause such interference.

Canadian Pacific, for its part, agrees that the ICCTA leaves room for states to

6

regulate and otherwise impact the ways Surface Transportation Board-regulated railway entities make use of their properties—in other words, Canadian Pacific indeed does not claim the ICCTA categorically preempts either of the Illinois statutes at issue. But Canadian Pacific argues that actual interference is imminent and certain. It points out that each and every proposed plan the Authority has come up with envisions purchasing or condemning more than thirty-five acres of land contained within the Bensenville Yard, even though Canadian Pacific has repeatedly told the Authority that the land is not for sale. Canadian Pacific also cites the fact that construction is well underway elsewhere, making this "an immediate problem for the Tollway itself as it must either convince the Court that its present plan does not somehow interfere with railroad operations, or it must figure out how it is going to build the south leg of the new toll road." Pl.'s Mem., dkt. no. 19, at 10.

In *Rock Energy Cooperative v. Village of Rockton*, 614 F.3d 745 (7th Cir. 2010), the Seventh Circuit confronted a substantially similar case. There, a local government ordinance conferred upon the Village of Rockton authority to acquire assets for local utilities by purchase or condemnation. *Id.* at 746. The Village threatened condemnation in letters to the owners of these assets, but it did not commence condemnation proceedings. *Id.* at 747. It did, however, file suit in state court to enforce an agreement in which the plaintiff had agreed to "explore the feasibility of [the Village's] acquiring the local utility assets" from the plaintiff. *Id.* at 746. Although the Seventh Circuit acknowledged that "it is typically no bar to ripeness if the government has only threatened enforcement, rather than actually brought a lawsuit," *id.* at 748, it nonetheless concluded that "the chance of future eminent-domain proceedings in [that]

7

case [was] too remote to support the [plaintiff's] claim." *Id.* at 749.

The same is true in this case. As the Authority points out, it has taken none of the steps that state law would require it to take were it in fact prepared to commence eminent-domain proceedings. Even in the most recent letter from the Authority to Canadian Pacific, the Authority did not indicate that it had commenced any action to condemn Canadian Pacific's property, nor did it suggest that it intended to do so soon. Rather, the Authority reiterated that it was interested in engaging in additional discussions with Canadian Pacific about the possible purchase of the land. Canadian Pacific contends that it has repeatedly and unequivocally told the Authority that its land is not for sale and that these refusals to deal distinguish this case from *Rock Energy*, in which the plaintiff had indicated some interest in negotiating with the locality. But Canadian Pacific's refusal to negotiate a purchase price does not render the potentiality of eventual condemnation proceedings imminent, nor does Canadian Pacific's belief that speedy judicial resolution is in the best interest of the Authority and its EOWA project.

The Authority's plans for the EOWA project continue to evolve, and it appears to still be interested in purchasing some portion of the Bensenville Yard from Canadian Pacific. Because the Court cannot determine the extent to which railroad transportation would be prevented or unduly interfered with by a hypothetical condemnation of the land the Authority wishes to acquire, any adjudication of this dispute would amount to an advisory opinion. This, the Constitution does not permit. *See* U.S. Const. Art. III § 1.

**Conclusion**

For the foregoing reasons, the Court grants defendant's motion to dismiss [dkt.

8

no. 13] and directs the Clerk to enter judgment dismissing the case for lack of subject matter jurisdiction.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 29, 2016